## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**MARK NOBLE PUGH JR.**                                             **PLAINTIFF**

**VS.**                          **CIVIL ACTION NO.:**   3:21cv19-MPM-RP

**EQUIFAX INFORMATION SERVICES, LLC;**
**TRANS UNION, LLC;**
**EXPERIAN MARKETING SOLUTIONS, LLC;**
**BARCLAYS BANK DELAWARE;**
**CAPITAL ONE BANK USA, NA;**
**CREDIT FIRST NATIONAL ASSOCIATION;**
**DISCOVER FINANCIAL SERVICE, LLC;**
**MUNICIPAL EMPLOYEES CREDIT UNION;**
**VERICRED SOLUTIONS, LLC;**
**MIDLAND FUNDING LLC;**
**CAVALRY PORTFOLIO SERVICES, LLC;**
**PORTFOLIO RECOVERY ASSOCIATES, LLC; AND**
**ACCOUNT RESOLUTION CORP, LLC**

                                                  **DEFENDANTS**

---

## COMPLAINT – Jury Trial Demanded

---

COMES NOW, the Plaintiff, Mark Noble Pugh, Jr., (hereinafter "Pugh" or "the Plaintiff") by and through undersigned counsel and files this Complaint against the Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*. (hereinafter "FCRA"), the Fair Debt Collection Practices Act 15 U.S.C. §1692 *et seq*. (hereinafter "FDCPA").

### Parties

1. Mark Noble Pugh, Jr., is an adult resident of Benton County, Mississippi, and is a "Consumer" as defined by the FCRA and FDCPA.

2.      Equifax Information Services, LLC ("Equifax") is a Georgia Limited Liability Company that may be served through its registered agent, Corporation Service Company at 7716 Old Canton Rd. Suite C. Madison, MS 39110.

3.      Equifax is a "Consumer Reporting Agency" as that term is defined by 15 U.S.C. §1681(f).

4.      Trans Union, LLC ("TransUnion") is a Delaware corporation that may be served through its registered agent, The Prentice Hall Corporation System, Inc., at 7716 Old Canton Rd. Suite C. Madison, MS 39110.

5.      TransUnion is a "Consumer Reporting Agency" as that term is defined by 15 U.S.C. §1681(f).

6.      Experian Marketing Solutions, LLC ("Experian") is a Ohio corporation that may be served through its registered agent, CT Corporation System, 645 Lakeland east Dr. Suite 101, Flowood, MS 39232.

7.      Experian is a "Consumer Reporting Agency" as that term is defined by 15 U.S.C. §1681(f).

8.      Barclays Bank Delaware ("Barclays") is a state-chartered bank headquartered in Wilmington, Delaware, and may be served process by delivering a copy of the summons and complaint by certified mail, return receipt requested to any officer or agent authorized to accept service at 100 S West St., Wilmington, Delaware, 19801.

9.      Discover Financial Services, LLC ("Discover") is a Delaware Limited Liability Company and may be served through its registered agent, CT Corporation, located at 645 Lakeland East Dr., Suite 101, Flowood, Mississippi 39232.

10.     Capital One Bank, NA ("Capital One") is a National Association operating as a bank, with its main office located in Glen Allen, Virginia and may be served process by delivering a copy of the summons and complaint by certified mail, return receipt requested to any

officer or agent authorized to accept service at 1680 Capital One Drive McLean, Virginia 22102.

11.     Credit First National Association ("Credit First") is a nationally chartered bank with its headquarters located in Brook Park, Ohio, may be served process by delivering a copy of the summons and complaint by certified mail, return receipt requested to any officer or agent authorized to accept service at 6275 Eastland Road Brook Park, Ohio 44142.

12.     Municipal Employees Credit Union ("Municipal Employees") is a state-chartered credit union headquartered in Oklahoma City, Oklahoma, may be served process by delivering a copy of the summons and complaint by certified mail, return receipt requested to any officer or agent authorized to accept service at 101 N. Walker Avenue, Oklahoma City, Oklahoma 73102.

13.     Midland Funding, LLC ("Midland") is a Delaware limited liability company with its principal place of business in San Diego, California that may be served through its registered agent, Corporation Service Company at 7716 Old Canton Rd. Suite C. Madison, MS 39110.

14.     Midland is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6) as it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."

15.     Portfolio Recovery Associates, LLC ("Portfolio") is a Delaware limited liability company with its principal place of business in Norfolk, Virginia. It may be served with process through its registered agent Corporation Service Company 7716 Old Canton Road, suite C, Madison, Mississippi 39110.

16. Portfolio is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6) as it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."

17. VeriCred Solutions, LLC ("VeriCred"), is a Delaware limited liability company with its principal place of business in Castle Rock, Colorado. It may be served with process through its registered agent, Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, Mississippi 39110.

18. VeriCred is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6) as it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

19. Calvary Portfolio Services, LLC ("Calvary"), is a Delaware limited liability company. It may be served process through its officers or managing agent, or through its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

20. Calvary is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6) as it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."

21. Account Resolution Corporation, LLC ("ARC") is a California Limited Liability Company that may be served through its registered agent, CT Corporation System, 645 Lakeland east Dr. Suite 101, Flowood, MS 39232.

22. ARC is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6) as it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."

- 4 -

23. Barclays, Discover, Capital One, Credit First, Municipal Employees, Midland, Portfolio, Calvary, ARC are Furnishers as that term is defined by 12 CFR §1022.41 because each of these entities furnish information relating to consumers to one or more Credit Reporting Agencies for inclusion in a Consumer Report. (These Defendants are collectively referred to as "the Furnishers"),

## Jurisdiction and Venue

24. This Court has jurisdiction pursuant to 15 U.S.C. §1681p and 28 U.S.C. §§1331, 1337 and 1367. This jurisdiction includes supplemental jurisdiction with respect to pendent state law claims.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the Plaintiff's asserted claims.

## Facts

26. Pugh has been very vigilant of his credit score because he has been consciously rebuilding his credit score with the hopes of obtaining a home loan.

27. After accessing his credit reports, Pugh noticed several accounts being wrongly reported by the three agencies and sent a dispute letter to each of the three agencies, Experian, TransUnion, and Equifax in September 2020.

28. Upon receipt of the disputes by Pugh, the Credit Reporting Agencies had a duty to conduct a reasonable investigation to determine the accuracy of the disputed accounts pursuant to 15 U.S.C. §1681i(a)(1).

29. 15 U.S.C. §1681i(2) then required the Credit Reporting Agencies to notify the Furnishers of the dispute.

30. Upon information and belief, the Credit Reporting Agencies notified the Furnishers of Pugh's dispute.

31. Upon notification of the dispute by the Credit Reporting Agencies, the Furnishers had a duty to investigate the dispute pursuant to 15 U.S.C. §1681s-2(b)(1).

32. Barclays, Discover, Capital One, Credit First, Municipal Employees, Midland, Portfolio, Calvary, ARC (collectively "Furnishers"), all concluded that the information being furnished on the accounts was correct and each Credit Reporting Agency updated its reporting information to reflect this outcome.

33. Upon notification that his disputes were not going to materially change the information reported on his Credit Reports, Pugh retained counsel to assist in disputing the information on his Credit Reports.

34. On October 15, 2020, Pugh, through his attorney, mailed a credit reporting dispute to Equifax. A copy of this Letter is attached as Exhibit A.

35. On October 15, 2020 Pugh, through his attorney mailed a credit reporting dispute to TransUnion. On October 16, 2020, Pugh, through his attorney, mailed a supplemental dispute to TransUnion for the accounts that were listed adding the Midland Funding Account – which was inadvertently omitted from the October 15 Dispute. Copies of both Disputes are attached as Exhibit B.

36. On October 21, 2020, Pugh, through his attorney, mailed a dispute letter to Experian for the accounts listed above. A copy of this letter is attached as Exhibit C.

37. TransUnion received copies of the letters attached as Exhibit B, which were sent by First Class mail.

38. Experian received a copy of Exhibit C, which was sent by First Class mail.

39. Equifax failed to acknowledge receipt of the dispute (Exhibit A), which was sent by First Class mail to the following address: Equifax Information Services, LLC, P.O. Box. 740241, Atlanta, GA 30374.

40. Apparently Equifax recently changed its address for credit reporting disputes to a different P.O. Box and failed to take actions to notify consumers of this change.

41. Upon information and belief, this change of address was done to limit the ability of Consumers to dispute inaccurate information on their Equifax credit reports.

42. Another dispute letter was sent to Equifax by Pugh's attorney on December 15, 2020 to the following address: Equifax Information Services, LLC, P.O. Box. 740256, Atlanta, GA 30374. A copy of this letter is attached as Exhibit D. This letter was sent by certified mail and was received on December 29, 2020.

43. The dispute letters clearly explain that the reporting of the referenced accounts was inaccurate because the accounts should have been reported as a $0 balance and that the accounts should not be reported as in collections or past due – as no amount is due or owed pursuant to Mississippi law and collection of these accounts by Debt Collectors is prohibited by Federal law.

44. The accounts associated with each dispute are identified in the tables below.

45. TransUnion reports the following adverse accounts that were the subject of Pugh's October 15 and October 16, 2020 disputes:

| **Account Name** | **Balance** | **Status/Notes** |
|---|---|---|
| Barclays Bank Delaware | $3,438 | Pay Status: charged off. Past Due: $3,438. |
| Barclays Bank Delaware | $4,304 | Pay Status: charged off. Past Due: $4,304. |
| Capital One | $2,879 | Pay Status: charged off. Past Due: $2,879. |

| Credit First NA | $1,614 | Pay Status: charged off. Past Due: $1,614. |
| Discover Financial Services | $1,271 | Pay Status: charged off. Past Due: $1,271. |
| Municipal Employees CU | $1,130 | Pay Status: charged off. Past Due: $1,130. |
| Cavalry Portfolio Services | $614 | Pay Status: In Collection. Past due: $614. |
| Midland Funding, LLC | $684 | Pay Status: In Collection. Past due: $684. |
| Portfolio Recovery Associates | $1,564 | Pay Status: In Collection. Past due: $1,564. |
| Portfolio Recovery Associates | $914 | Pay Status: In Collection. Past due: $914 . |

46.     TransUnion also reports the following adverse account:

| **Account Name** | **Balance** | **Status/Notes** |
| --- | --- | --- |
| Santander Consumer USA | $0 | Pay status: Account 120 days past due date. |

47.     The Plaintiff did not dispute the Santander account as reported by TransUnion because it was being reported accurately.

48.     Equifax reports the following adverse accounts that were the subject of Pugh's October 15, 2020 and December 15, 2020 disputes:

| **Account Name** | **Balance** | **Status/Notes** |
| --- | --- | --- |
| Me Credit Union | $1,130 | Reported Balance: $1,130 |
| Account Resolution Corp | $222 | Collections.  Original Amount owed $193 |
| Account Resolution Corp | $72 | Collections.  Original Amount owed $63 |
| Account Resolution Corp | $115 | Collections.  Original Amount owed $100 |
| Cavalry Portfolio Services | $614 | Collections. |

49.     Experian reports the following adverse accounts that were the subject of Pugh's October

21, 2020 dispute:

| Account Name | Balance | Status/Notes |
|---|---|---|
| Barclays Bank Delaware | $4,304 | Account charged off. $3012 written off. $4,304 past due as of Nov 2020. |
| Barclays Bank Delaware | $3,438 | Account charged off. $2,316 written off. $3,438 past due as of Nov 2020. |
| Capital One | $2,879 | Account charged off. $2,428 written off. $2,879 past due as of Nov 2020. |
| Cavalry Portfolio Service | $614 | Collection account. $614 past due as of Nov 2020. |
| Credit First NA/ Firestone | $1,614 | Account charged off. $1,614 written off. $1,614 past due as of Dec 2020. |
| Discover Financial Services | $1,271 | Account charged off. $1,271 written off. $1,271 past due as of Dec. 2020. |
| Municipal Employees CU | $1,130 | Account charged off. $1,130 written off. |
| Portfolio Recovery Associates | $1,564 | Collection account. $1,564 past due as of Dec 2020. |
| Portfolio Recovery Associates | $914 | Collection account. $914 past due as of Dec 2020. |

50.     Experian also reports the following adverse account:

| Account Name | Balance | Status/Notes |
|---|---|---|
| Santander Consumer USA | - | Paid, Closed. $37,575 written off. |

51.     The Plaintiff did not dispute the Santander account as reported by Experian because it was

being reported accurately.

52.     Under Mississippi law, for each of the adverse accounts, the statute of limitations expired

on the debt no later than three years after the date of the last transaction or from the last

written acknowledgment of the debt.

53.     There were no written acknowledgments of any of the debts within three years prior to the

disputes.

54.     There were no transactions with regard to any of the debts within three years prior to the disputes.

55.     Under Mississippi Code §15-1-3, the expiration of a statute of limitations extinguishes the right as well as the remedy regarding debt.   It is well established that the statute of limitations in this state is not merely an affirmative defense, instead the debt is "extinguished" once the statute has run. *Greene v. Greene*, 145 Miss. 87, 110 So. 218, 222-23 (Miss. 1926). "[T]he account ceases to be a debt. It is completely extinguished by the statute of limitation . . . ." Id. at 223; see also, H*awkins v. S. Pipe & Supply Co.*, 259 So. 2d 696, 697 (Miss. 1972); *Proctor v. Hart*, 72 Miss. 288, 16 So. 595, 596 (Miss. 1894). The Supreme Court of the United State has even noted the unique effect of Miss. Code §15-1-3 compared to other states. *See, Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1412 (2017) (noting "expiration of the limitations period extinguishes the remedy and the right.").

56.     Accordingly, as stated in the dispute letters sent by Pugh's attorney, the reported information was inaccurate for two reasons:

   a.   The balance of the debt should have been reported as $0. "[T]he account ceases to be a debt. It is completely extinguished by the statute of limitation . . . ." *Greene v. Greene*, 145 Miss. 87, 110 So. 218, 222-23 (Miss. 1926).[1]

   b.   Collection of these accounts is violative of the Fair Debt Collection Practices Act and therefore, the reporting of the account as "in collection" is inaccurate.

---

[1] See i.e. *Strohbehn v. Access Grp. Inc.*, 292 F. Supp. 3d 819, 832 (E.D. Wis. 2017)(holding that a Debt Collector's credit reporting was directed at non-existent debts".  Wisconsin and Mississippi are the only two states in which the expiration of a statute of limitations extinguishes the right and the remedy associated with a debt.  *See, i.e. Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (discussing Wisconsin's statute of limitations which has been described by the United States Supreme Court as the same. *See, Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1412 (2017)).

57. Correcting this information to comply with Pugh's dispute would not prevent the Credit Reporting Agencies and the Furnishers from reporting accurate information regarding past delinquencies, instead the dispute was narrowly tailored to correct the inaccurate information about the collection status and current balance due.

58. The Santander Consumer USA account was accurately reported on the TransUnion Report and the Experian Report as having no current balance, being written off, and the payment history was accurately reported until the account was extinguished in 2017.

59. The Santander Consumer USA account as reported demonstrates that it is possible for Furnishers and Credit Reporting Agencies to accurately report adverse accounts that are expired pursuant to Mississippi law. The Defendants simply failed to do so for the other accounts.

60. Upon receipt of the second dispute by Pugh, the Credit Reporting Agencies had a duty to conduct a reasonable investigation to determine the accuracy of the disputed accounts pursuant to 15 U.S.C. §1681i(a)(1).

61. 15 U.S.C. §1681i(2) then required the Credit Reporting Agencies to notify the Furnishers of the dispute.

62. Upon information and belief, the Credit Reporting Agencies notified the Furnishers of Pugh's second dispute.

63. Upon notification of the dispute by the Credit Reporting Agencies, the Furnishers had a duty to investigate the dispute pursuant to 15 U.S.C. §1681s-2(b)(1).

64. Following the second disputes, each of the Credit Reporting Agencies continue to report the inaccurate information that was subject of the dispute.

65. Defendant Midland responded to Pugh's attorney directly regarding the dispute in a letter dated November 4, 2020. This correspondence is attached as Exhibit E.

66. Plaintiff, through counsel, responded to Midland's letter dated November 4, 2020 (Exhibit E) with a detailed explanation regarding the dispute. This letter is attached as Exhibit F.

67. After the Plaintiff replied to Midland's letter dated November 4, 2020 (Exhibit E), Midland refused to correct the reported information.

68. Midland's letter dated November 4, 2020 states "this is an attempt to collect a debt." (Exhibit E).

69. Midland's letter also states that the current balance is $684.40.

70. Because the debt was extinguished upon the running of the statute of limitations, the assertion of the balance as $684.40 is false.

71. None of the disputed information was corrected by the Furnishers or the Credit Reporting Agencies.

72. A reasonable investigation of the disputes would have revealed that the accounts were all beyond the statute of limitations and that the balances were inaccurate unless reported as $0.00 as stated in the disputes.

73. A reasonable investigation of the disputes would have revealed that the reporting of the accounts as "in collection" was inaccurate because collection of expired debt is prohibited by law.

74. Accordingly, the Credit Reporting Agencies failed in their obligations under 15 U.S.C §1681i to conduct a reasonable investigation into the disputes and to correct the inaccurate information pursuant to said investigation.

75. 15 U.S.C. §1681s-2(b)(1) provides that after a Furnisher receives a credit reporting dispute from a Credit Reporting Agency, they shall perform the following steps:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

76. A reasonable investigation of the disputed information would have revealed that the reported information was inaccurate as stated in Pugh's disputes.

77. The Furnishers failed to conduct investigations with regard to the disputed information.

78. The Furnishers failed to review all relevant information provided by the Credit Reporting Agencies – namely, the dispute letter sent by Pugh's Attorney.

79. The Furnishers failed to update the inaccurate information that they furnished to the Credit Reporting Agencies.

80. Because of the Defendant's actions, Plaintiff has suffered actual damages including postage, attorneys' fees, and has been subjected to higher interest rates and denials of credit.

81. Despite numerous opportunities to verify the debt and correct its errors prior to the filing of this Complaint, the Credit Reporting Agencies and Furnishers have failed to update and properly report the above accounts.

82. As a result, Pugh was forced to retain a counsel to address these issues and ultimately file this complaint.

83. Despite numerous opportunities to correct their errors, the debt collectors have failed to conduct a proper investigation of Pugh's debt and the proper way to list said debt under Mississippi law, thus ignoring their obligations under the FCRA and the FDCPA.

84. The Furnishers and debt collectors failed to conduct a reasonable investigation pursuant to the Fair Credit Reporting Act. If they had done so they would have furnished information showing a $0.00 balance and not listed the debts "in collections" or as "past due".

85. The Credit Reporting Agencies failed to conduct reasonable reinvestigation regarding the information furnished by the debt collectors and Furnishers.

86. The Credit Reporting Agencies and Furnishers failed to follow the procedures that Congress laid out in the FCRA regarding disputed information.

87. The Debt Collectors continue to furnish information that is wrong and negatively impacting Pugh's credit.

88. This negative information is false and misleading.

89. As a result of this negative information on his Consumer Reports, Pugh has experienced a lower credit rating which impacts his ability to obtain credit or financing.

90. Pugh has incurred has incurred monetary damages in the form of postage and attorney cost in his attempts to have the debt collectors and Furnishers correct their false statements to the Credit Reporting Agencies.

91.    On November 2, 2020, VeriCred sent Pugh an email offering settlement of an account purportedly owed to a creditor named "Cascade - Santander."  It stated that the current balance was $10,260.82 and purported to offer a settlement. A copy of this email is attached as Exhibit G.

92.    Vericred's November 2, 2020 email contained the following message:

> Dear MARK PUGH:
> We have a great settlement offer on your account in our office at VeriCred Solutions, LLC.  Please call us back at 1-800-250-7430 to hear the great limited time offer we have available for you and get this matter resolved.
>
> *BONUS*- This may qualify to be completely removed from your credit if the balance is resolved today or with some qualified settlements being resolved today by 5PM EST/ 3PM MST. Please make sure to ask if the settlement offer on your account qualifies to be removed from your credit where we are reporting it.
>
> This communication is from a debt collector and any information obtained is used only for that purpose.
>
> Thank you,
>
> John W.
> info@vericredllc.com

93.    Vericred did not send the notice required by 15 U.S.C. §1692g within five days of its initial communication with Pugh.

94.    On December 1, 2020, VeriCred sent Pugh an email offering settlement of an account purportedly owed to a creditor named "Cascade - Santander."  It stated that the current balance was $10,260.82 and purported to offer a settlement. A copy of this email is attached as Exhibit G.

95.    Vericred's December 1, 2020 email contained the following message:

> Dear MARK PUGH:

We have a settlement offer on your account in our office at VeriCred Solutions, LLC. Please call us back at 1-800-250-7430 to hear the limited time offer we have available for you and get this matter resolved and put behind you.

- This may qualify to be completely removed from your credit if the balance is resolved today or with some qualified settlements being resolved completely by 12/31/2020. Please make sure to ask if the settlement offer on your account can be extended out until 12/31/2020 and if your settlement offer qualifies to be removed from your credit where we are reporting it.

This communication is from a debt collector and any information obtained is used only for that purpose.

Thank you,
John W.
info@vericredllc.com

96.   The last payment on the Santander account was 06/30/2017, thus it was beyond the statute of limitations.[2]

97.   Vericred failed to identify that the account was expired under the statute of limitations.

98.   Pugh's attorney did not include this account in their dispute letters because prior to Vericred's involvement, the account was being properly reported by Santander as an account with $0.00 balance and not in collections.

99.   The emails from Vericred dated November 2, 2020 and December 1, 2020 respectively violated 15 U.S.C. § 1692e, as they contain false representations and are attempts to collect on a debt that has been extinguished in right and remedy.

100.  The communications sent by Vericred to Pugh are substantially similar to the communication that was the subject of *Daugherty v. Convergent Outsourcing, Inc.*, 836

---

[2] Upon information and belief, the Santander debt was a deficiency for an auto repossession, which would have placed the statute of limitations at one year. Mississippi Code §15-1-23. Even if the statute of limitations was three years, the statute would have nevertheless run.

F.3d 507 (5th Cir. 2016), where the Fifth Circuit found the communication to be misleading pursuant to §1692e of the FDCPA.

101.    As a result of Vericred's actions, Pugh has suffered actual damages including attorneys' fees.

**Count I: As to Defendants: Barclays, Discover, Capital One, Credit First, Municipal Employees, Midland, Portfolio, Calvary, and ARC
The Furnishers Violated § 1692s-2(b) of the Fair Credit Reporting Act**

102.    All of the foregoing paragraphs are realleged and incorporated herein by this reference.

103.    Barclays, Discover, Capital One, Credit First, Municipal Employees, Midland, Portfolio, Calvary, and ARC (Collectively referred to as "the Furnishers") furnished negative information regarding Pugh to one or more Credit Reporting Agencies.

104.    §1681s-2(a)(1) of the FCRA prohibits the furnishing of erroneous information to Credit Reporting Agencies if the Furnisher knows or has reason to know that the information is inaccurate.

105.    §1681s-2(a)(2) of the FCRA requires Furnishers of information to Credit Reporting Agencies to promptly notify Credit Reporting Agencies if they determine that information they have provided is not complete or accurate.

106.    §1681s-2(b) of the FCRA requires Furnishers of information to Credit Reporting Agencies to conduct an investigation in accordance with the terms of §1681i(a)(1) when the Furnisher receives a notice of dispute from a Credit Reporting Agency and to report the results of that investigation to the Credit Reporting Agency.

107.    Pugh initiated a dispute with the Credit Reporting Agencies regarding the negative reporting of account(s).

108. Plaintiff through counsel again disputed with the Credit Reporting Agencies regarding the negative reporting of account(s) and counsel thoroughly explained why the account(s) were wrongly reported under Mississippi law.

109. This dispute contained all relevant information regarding the dispute including that the accounts must show a $0 balance and they could not be reported as "in collections" or "past due".

110. The Furnishers received notification of the disputes.

111. The Furnishers failed to conduct a meaningful investigation when they received notice of the dispute.

112. The Furnishers responded to the dispute in a manner that left the derogatory account information on Pugh's Credit Reports.

113. The negative information continues to be reported.

114. As a result of the dispute, the Furnishers knew or should have known that the information they furnished to one or more of the Credit Reporting Agencies was inaccurate.

115. If the Furnishers had conducted a meaningful investigation of the Pugh's credit reporting dispute, there would be no outstanding balance reported or accounts listed as "in collections" or "past due".

116. Accordingly, the Furnishers violated §1681s-2(b) of the FCRA with respect to Pugh.

117. Pugh has suffered actual financial damages as a result of the Furnishers' violations of the FCRA.

118. The Furnishers' actions were willfully noncompliant with their duties under §1681s-2(b) to conduct a meaningful investigation upon notification of a credit reporting dispute and to modify incorrect information.

119. Pugh has suffered emotional distress as a result of the Furnishers' violations of the FCRA.

120. Because of the Furnishers' willful violations of the FCRA, Pugh is entitled to statutory damages of $1,000.00 for each violation, as well as actual damages, punitive damages, and attorneys' fees pursuant to 15 U.S.C. §1681n.

121. In the alternative, because of the Furnishers' negligent violations of the FCRA, Pugh is entitled to actual damages, and attorneys' fees pursuant to 15 U.S.C. §1681o.

### **Count II: As to Defendants: Midland, Portfolio, Calvary, and ARC**
### **The Debt Collectors Violated the Fair Debt Collection Practices Act**

122. All of the foregoing paragraphs are realleged and incorporated herein by this reference.

123. Midland, Calvary, Portfolio, and ARC are Debt Collectors as that term is defined by §1692a of the FDCPA for the reasons stated *infra*.

124. Pugh is a Consumer as defined by §1692a(3) of the FDCPA.

125. Each of the accounts reported by the debt collectors is a "Debt" as defined by §1692a(4) of the FDCPA as it is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."

126. The reporting of a debt to the Credit Reporting Agencies by the debt collectors is an attempt to collect that debt.

127. Because the debt(s) are over 3 years old, the right and remedy has been extinguished and therefore any furnishing of information on those accounts that does not state the balance as $0 or includes "in collections" or "past due" is a false representation under 15 U.S.C. § 1692e.

128. Because the debt(s) is beyond the statute of limitations, the reporting of the debt(s) by Midland, Calvary, Portfolio, and ARC of "in collections", a balance of more than $0, and

or being "past due" is a false representation regarding the amount, character, and legal status of the debt(s).

129.    The actions of Midland, Calvary, Portfolio, and ARC in falsely representing the character, amount, and legal status of this debt are in violation of §1692e(2) of the FDCPA.

130.    Midland, Calvary, Portfolio, and ARC violated §1692d of the FDCPA by engaging in conduct the natural consequences of which was to harass, oppress, or abuse any person in connection with the collection of a debt.   Specifically, the debt collectors actions in reporting the debt(s) and debt status that they knew or had reasonable cause to believe was inaccurate violated the FCRA 15 U.S.C. §1681s-2(a) and the rights of the Plaintiff.

131.    Pugh has suffered actual financial damages as a result of Midland, Calvary, Portfolio, and ARC's violations of the FDCPA including costs associated with certified mail, postage, and attorneys' fees.

132.    Pugh suffered emotional distress as a result of the violations of the FDCPA by Midland, Calvary, Portfolio, and ARC.

133.    As a result of the above violation of the FDCPA, Midland, Calvary, Portfolio, and ARC are liable to Pugh for actual damages, statutory damages up to $1,000.00, and attorney's fees pursuant to 15 U.S.C. §1692k.

### Count III: As to Defendants: TransUnion, Experian, and Equifax
### The Credit Reporting Agencies Violated the Fair Credit Reporting Act.

134.    All of the foregoing paragraphs are realleged and incorporated herein by this reference.

135.    15 U.S.C. §1692i(a)(1) provides that upon notification of a dispute to the accuracy of information contained in a Consumer Report, that the Consumer Reporting Agency will "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

136. Pugh initiated a dispute with the Credit Reporting Agencies regarding the accounts reported by the debt collectors.

137. Upon initiation of the dispute, the Credit Reporting Agencies had a duty to conduct a reasonable investigation into the purported debt.

138. A reasonable reinvestigation would have revealed that the debt was actually beyond the three-year statute of limitations and thus could not be reported as more than a $0 balance, and could not be reported as "in collections" or "past due".

139. The Credit Reporting Agencies completely failed to verify the accuracy of the information furnished by the debt collectors and solely relied on the misrepresentation of the debt collectors in conducting their deficient "investigation".

140. The negative information continues to be reported.

141. Accordingly, the Credit Reporting Agencies violated 15 U.S.C. §1681i with respect to Pugh.

142. Pugh has suffered actual financial damages as a result of the Credit Reporting Agencies violations of the FCRA.

143. The Credit Reporting Agencies actions were willfully noncompliant with their duties under §1681i to conduct a meaningful investigation upon notification of a credit reporting dispute and to modify incorrect information.

144. Pugh has suffered emotional distress as a result of the Credit Reporting Agencies' violations of the FCRA.

145. Because of the Credit Reporting Agencies' willful violations of the FCRA, Pugh is entitled to statutory damages of $1,000.00 for each violation, as well as actual damages, punitive damages, and attorneys' fees pursuant to 15 U.S.C. §1681n.

146. In the alternative, because of the Credit Reporting Agencies' negligent violations of the FCRA, Pugh is entitled to actual damages, and attorneys' fees pursuant to 15 U.S.C. §1681o.

### Count IV: As to Defendant: Vericred
### VeriCred Violated the FDCPA

147. All of the foregoing paragraphs are realleged and incorporated herein by this reference.

148. VeriCred is a Debt Collector as that term is defined by §1692a(6) of the FDCPA.

149. Pugh is a Consumer as defined by §1692a(3) of the FDCPA.

150. The account purportedly owed to VeriCred by Plaintiff is a "Debt" as defined by §1692a(5) of the FDCPA as it is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."

151. The settlement offer by VeriCred is an attempt to collect that debt.

152. VeriCred's communications to Pugh failed to inform Pugh that the debt was beyond the statute of limitations or included any disclaimers related to the collection of stale debt.

153. Because the debt is over 3 years old, the right and remedy has been extinguished and therefore any attempt to collect on the stale debt is a false representation under 15 U.S.C. § 1692e.

154. The actions of Vericred in falsely representing the character, amount, and legal status of this debt are in violation of §1692e(2) of the FDCPA.

155. The communications sent by Vericred to Pugh are substantially similar to the communication that was the subject of *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016), where the Fifth Circuit found the communication to be misleading pursuant to §1692e of the FDCPA.

156. Vericred violated §1692d of the FDCPA by engaging in conduct the natural consequences of which was to harass, oppress, or abuse any person in connection with the collection of a debt.

157. Vericred violated §1692f of the FDCPA by attempting to collect on a debt that is beyond the statute of limitations.

158. Vericred violated §1692g of the FDCPA by failing to send the required notices within five days of its first communication to Pugh.

159. Pugh has suffered actual financial damages as a result of Vericred's violations of the FDCPA including costs associated with and attorneys' fees.

160. Pugh suffered emotional distress as a result of Vericred's violations of the FDCPA.

161. As a result of the above violation of the FDCPA, Vericred is liable to Pugh for actual damages, statutory damages up to $1,000.00, and attorney's fees pursuant to 15 U.S.C. §1692k.

### Count V: As to Defendant: Midland
### Midland Violated the FDCPA

162. All of the foregoing paragraphs are realleged and incorporated herein by this reference.

163. Midland is a Debt Collector as that term is defined by §1692a(6) of the FDCPA.

164. Pugh is a Consumer as defined by §1692a(3) of the FDCPA.

165. The account purportedly owed to Midland by Plaintiff is a "Debt" as defined by §1692a(5) of the FDCPA as it is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."

166. In a letter dated November 4, 2020, Midland sent a letter addressed to Plaintiff at the address for Plaintiff's attorney. (Exhibit E.)

167. The reverse side of the letter states "This is an attempt to collect a debt."

168. The letter identifies one of the accounts disputed by Plaintiff in his credit reporting disputes and states that the "Current Balance" of said account is $684.40.

169. The last payment on the account was greater than three years before date on the letter and the debt referenced in the letter was extinguished by virtue of Mississippi law as discussed *infra*.

170. Because the debt is over 3 years old, the right and remedy has been extinguished and therefore any attempt to collect on the stale debt is a false representation under 15 U.S.C. § 1692e.

171. Accordingly the statement that the "Current Balance" of the account was $684.40 was a misrepresentation.

172. The actions of Midland in falsely representing the character, amount, and legal status of this debt are in violation of §1692e(2) of the FDCPA.

173. Midland violated §1692d of the FDCPA by engaging in conduct the natural consequences of which was to harass, oppress, or abuse any person in connection with the collection of a debt.

174. Midland violated §1692f of the FDCPA by attempting to collect on a debt that is beyond the statute of limitations.

175. Pugh has suffered actual financial damages as a result of Midland's violations of the FDCPA including costs associated with and attorneys' fees.

176. Pugh suffered emotional distress as a result of Midland's violations of the FDCPA.

177.    As a result of the above violation of the FDCPA, Midland is liable to Pugh for actual
        damages, statutory damages up to $1,000.00, and attorney's fees pursuant to 15 U.S.C.
        §1692k.

**WHEREFORE,** the Plaintiff having set forth his claims for relief against the Defendant
respectfully pray of the Court as follows:

A.      That the Plaintiff recover against Barclays, Discover, Capital One, Credit First,
        Municipal Employees, Midland, Portfolio, Calvary, ARC, TransUnion, Experian, and
        Equifax a sum to be determined by the Court in the form of actual damages for
        Defendants' violations of the FCRA.

B.      That the Plaintiff recover against Barclays, Discover, Capital One, Credit First,
        Municipal Employees, Midland, Portfolio, Calvary, ARC, TransUnion, Experian, and
        Equifax $1,000.00 in the form of statutory damages for each of the Defendants'
        violations of the FCRA.

C.      That the Plaintiff recover against the Midland, Portfolio, Calvary, ARC, and Vericred,
        a sum to be determined by the Court in the form of actual damages for Defendants'
        violations of the FDCPA.

D.      That the Plaintiff recover against Midland, Portfolio, Calvary, ARC, and Vericred, the
        sum of $1,000.00 in the form of statutory damages for the debt collectors violations of
        the FDCPA.

E.      That the Plaintiff recover against Barclays, Discover, Capital One, Credit First,
        Municipal Employees, Midland, Portfolio, Calvary, ARC, TransUnion, Experian, and
        Equifax a sum to be determined by the Court in the form of punitive damages awardable
        under the FCRA;

F.     That the Plaintiff recover against all of the Defendants, jointly and severally, all reasonable legal fees and expenses incurred by their attorney as authorized under the FCRA and required by the FDCPA; and

G.     That the Plaintiff have such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Respectfully Submitted,

Mark Noble Pugh
By Counsel:

/s/Michael T. Ramsey
Michael T. Ramsey, MSB #104978
SHEEHAN & RAMSEY, PLLC
429 Porter Avenue
Ocean Springs, MS 39564
MS Bar No. 104978
(228) 875-0572 Fax: (228) 875-0895
Mike@sheehanramsey.com